# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **TIMOTHY QUINN,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> **AMAZON WEB SERVICES, INC.** ) <br> ) <br> ) <br> **Defendant.** ) | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff **Timothy Quinn** brings this civil action for relief and damages against **Defendant Amazon Web Services, Inc.** based on the following allegations and causes of action.

## NATURE OF THE ACTION

1. This lawsuit asserts employment discrimination claims against Amazon Web Services, Inc. ("AWS" or "Defendant") arising from the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2) ("FMLA") and the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12112(a), 12203(a).

2. Plaintiff Timothy Quinn ("Plaintiff" or "Quinn") alleges that AWS discriminated against him based on his disability in the form of a mental health

1

impairment. Quinn also contends that AWS retaliated against him under the FMLA for taking medical leave for his disability and under the ADA for filing an internal complaint alleging disability discrimination. Quinn seeks economic damages, including back pay and lost benefits; noneconomic compensatory damages; punitive damages to the extent applicable; liquidated damages under the FMLA; as well as his attorneys' fees and costs of litigation.

## THE PARTIES

3. Quinn was employed as a Senior Technical Account Manager at AWS' facility located at 3333 Piedmont Rd. NE, Atlanta, Georgia 30326, which is located in Fulton County.

4. AWS is a covered entity under the ADA in that it had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 42 U.S.C.A. § 12111(5)(A).

5. AWS is a covered employer under the FMLA in that it is engaged in an industry affecting commerce and has had more than 50 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. 29 C.F.R. § 825.104(a).

## PERSONAL JURISDICTION

6. AWS may be served with proper process through its registered agent

on record with the Georgia Secretary of State: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

## SUBJECT-MATTER JURISDICTION AND VENUE

7. Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

8. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as AWS conducts business in this judicial district and division. Some or all of the alleged unlawful acts also occurred in this judicial district and division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Quinn filed his charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 410-2023-11559 on August 29, 2023. A copy is attached as Exhibit A.

10. Quinn subsequently received a Right-to-Sue letter from the EEOC on June 10, 2024, a copy which is attached as Exhibit B.

11. Quinn timely files his claims under the ADA.

## FACTUAL ALLEGATIONS

12. From August 2021 to May 2023, Quinn worked as a Senior Technical Account Manager at AWS' facility in Atlanta, Georgia.

13. AWS operates an online platform that provides cost-effective cloud computing solutions.

14. Quinn has been diagnosed with clinical depression and anxiety.

15. Early on in his employment with AWS, Quinn disclosed his mental health diagnosis to human resources ("HR") management and selected senior level leadership.

16. For the first nine months of his tenure with AWS, Quinn felt that he was in a supportive and productive environment in which his mental health was not a liability.

17. In late April or early May 2022, Jordan Stacy assumed the role of managing Quinn's accounts team.

18. In the summer of 2022, Quinn and Stacy began to have increasing difficulties in communicating at work.

19. Quinn decided to disclose to Stacy that he suffers from clinical depression and anxiety. Quinn's goal in revealing his diagnosis was to provide context for his request for more consistent feedback and interaction from Stacey regarding assignments.

20. As Quinn explained to Stacy, regular engagement regarding workflow was a tool for Quinn to alleviate performance anxiety and stress.

21. Stacy responded by doing the opposite of what Quinn asked. In fact, Stacy increasingly avoided communicating with Quinn at all.

22. Quinn felt his condition begin to deteriorate and in November 2022, he took concurrent FMLA and short-term disability leave so that he could participate in an advanced outpatient therapy program.

23. Quinn returned from his medical leave in February 2023.

24. When Quinn returned to work from leave, and his relationship with Stacy showed no signs of improvement, Quinn requested a series of accommodations from Defendant's leave and disability team, including reassignment to a new manager; or alternatively, the right to take time-out breaks after extended interactions with Mr. Stacy; and occasional modifications to his schedule so that he could attend therapy sessions.

25. Later in February 2023, soon after he began applying for accommodations, and the same month he returned from FMLA leave, Quinn was suddenly placed on what Amazon entities refer to as a "Pivot Plan." Under Pivot, the employee is offered the option of separating from the company with a severance package or remaining under a continuing review period of several months, with the understanding that termination is the next step if there is no improvement.

26. Quinn filed a complaint with the HR department about his placement

in Pivot and his treatment by Stacy. His challenge to his selection for Pivot was unsuccessful and the HR department's investigation of his concerns regarding Stacy was short-lived and cursory at best. For example, the department declined to interview multiple witnesses Quinn identified regarding Stacy's conduct toward him.

27. While Quinn was granted permission to take a time-out after his regular one-on-one sessions with Stacy, his request for reassignment to a new supervisor was denied.

28. Quinn's request for schedule modifications to attend therapy sessions was also granted, but he was required to ask permission each time he needed to alter his work hours. On several occasions, he was denied authorization to change his hours to attend therapy.

29. On May 4, 2023, Quinn filed a formal complaint with AWS' ethics department alleging ongoing mistreatment by Stacy. Quinn also alleged that HR manager Melody Skinner had failed to adequately investigate his prior February 2023 complaint regarding Stacy's behavior.

30. Quinn's May complaint specifically described that after his disclosure of his disability to Stacy in 2022, Stacy's treatment of him only worsened. Quinn recounted that after his return from FMLA leave several months earlier, he believed that Stacy sought to actively intensify pressure on him regarding

deadlines and assignments.

31. Despite clear references in the complaint to punitive behavior by a manager based on a medical disability, to Quinn's knowledge, AWS did not conduct any investigation.

32. On May 19, 2023, approximately two weeks after his ethics complaint, Quinn was notified that he was being terminated, ostensibly on grounds that he failed to demonstrate improvement under the Pivot Plan. AWS did not apprise Quinn that he failed to satisfy the criteria for Pivot until after he lodged a formal allegation of disability discrimination.

33. Quinn's fortunes at AWS deteriorated after he disclosed his depression and anxiety to his manager and, again, after he took three months of medical leave based on his mental health condition. But for Quinn's mental health struggles and his manager's negative reaction to his condition, he would never have been fired.

34. AWS' sudden assignment of Quinn to its Pivot Plan was in close proximity to his return from FMLA leave.

35. In similar fashion, Quinn's termination occurred two weeks after he initiated an internal complaint of disability discrimination, strengthening the inference that AWS' firing of Quinn also reflects retaliation under the ADA.

36. Quinn's termination deprived him of income and exacerbated his

mental anguish and emotional distress, therefore entitling him to lost wages and noneconomic compensatory damages.

## CAUSES OF ACTION

### COUNT I
**(Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2615(a)(2))**

37. Plaintiff Quinn incorporates by reference paragraphs 1-36 of this Complaint as though set forth fully and separately herein.

38. Quinn was an eligible employee under the FMLA who was qualified for his position.

39. AWS is a covered employer under the FMLA.

40. Quinn exercised his FMLA rights by taking approximately three months of medical leave for a serious mental health related condition from November 2022 through February 2023.

41. AWS subjected Quinn to an adverse action by placing him on Amazon's version of a performance improvement within close temporal proximity of his return from FMLA leave, causing Quinn to be subjected to a heightened risk of termination.

42. As a direct and proximate cause of AWS' retaliatory conduct under the FMLA, Quinn eventually incurred lost wages and benefits. Given that AWS'

actions reflect a willful violation of his FMLA rights, Quinn is further entitled to liquidated damages.

## COUNT II
### (Disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.A. § 12112(a))

43. Plaintiff Quinn incorporates by reference paragraphs 1-36 of this Complaint as though set forth fully and separately herein.

44. Quinn was at all relevant times a qualified individual under the ADA in that during his employment with AWS, he had a mental health impairment, i.e., clinical depression and anxiety, that substantially limited his ability to conduct major life activities, including concentrating, thinking, and working.

45. Quinn could still perform the essential functions of his job with or without reasonable accommodations.

46. AWS discriminated against Quinn by terminating him based on his disability.

47. AWS' discriminatory conduct under the ADA has inflicted various economic damages on Quinn, including but not limited to loss of back pay, loss of front pay, and loss of benefits; as well as noneconomic damages, including emotional distress and mental anguish.

# COUNT III

## (Retaliation in violation of the Americans with Disabilities Act as Amended, 42 U.S.C.A. § 12203(a))

48.  Plaintiff Quinn incorporates by reference paragraphs 1-36 of this Complaint as though set forth fully and separately herein.

49.  Quinn engaged in protected activity under the ADA in that he filed an internal complaint alleging disability discrimination.

50.  AWS retaliated against Quinn by terminating him because of his protected activity under the ADA.

51.  AWS' retaliatory conduct has inflicted various economic damages on Quinn, including but not limited to loss of back pay, loss of front pay, and loss of benefits, as well as noneconomic damages, including emotional distress and mental anguish.

# PRAYER FOR RELIEF

Wherefore, based on the above stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits, including liquidated damages under the FMLA.

B. Compensatory damages to the extent allowed by law.

C. Punitive damages.

D. Attorneys' fees and costs of litigation.

E. Prejudgment and post-judgment interest at the highest lawful rate.

F. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted this 9th day of September, 2024.

        **HKM Employment Attorneys LLP**

        *s/Artur Davis*

        Artur Davis[1]
        ASB-3672-D56A
        2024 3rd Ave. North
        Suite 212
        Birmingham, AL 35203
        Direct: 205-881-0935
        adavis@hkm.com

        Jerilyn E. Gardner
        GA Bar No. 139779
        3344 Peachtree Road NE

---

[1] Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

Suite 800
Office No. #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Attorneys for Plaintiff Timothy Quinn**